JAMES ANDREW HINDS, JR. (SBN 71222)
jhinds@hindslawgroup.com
THE HINDS LAW GROUP, APC
2390 Crenshaw Blvd., Ste. 240
Torrance, California 90501
Telephone: (310) 617-1877

Attorneys for Plaintiff Prelude Systems, Inc. D/B/A DemandBlue

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# SNATA ANA DIVISION

| | |
|---|---|
| PRELUDE SYSTEMS, INC. d/b/a/ DEMANDBLUE, a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>WATCH COMMUNICATIONS d/b/a W.A.T.C.H. TV COMPANY and WATCH TV, BENTON RIDGE TELEPHONE COMPANY, and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1) **BREACH OF CONTRACT**<br>2) **COMMON COUNTS**<br><br>**Demand for Trial by Jury** |

Plaintiff, Prelude Systems, Inc. D/B/A DemandBlue (hereinafter referred to as the "Plaintiff"), complains against each of the above-captioned Defendants, **(1)** Watch Communications d/b/a W.A.T.C.H. TV Company and WATCH TV (hereinafter referred to as "Watch"), **(2)** Watch is a subsidiary of Defendant Benton Ridge Telephone Company (hereinafter referred to as

COMPLAINT

-1-

"Benton"), and **(3)** DOES 1-10, inclusive (hereinafter collectively referred to as the "Defendants") and avers as follows:

## SUMMARY

1. This action involves a breach of contract on the part of the Defendants, and some of them. The contract was for the Plaintiff to, among other things **(1)** setup of the CPQ managed package and associated settings for Quote to Order process for Watch, **(2)** configuration of CPQ specific product pricing functionality and CPQ Product/Price Rules for Watch, **(3)** creation of one standard Quote template to generate a client facing PDF file using the standard Salesforce CPQ Template engine for Watch, and **(4)** for migration of existing customer data to include products, pricing, discounts, and invoicing schedules into the Salesforce Billing platform. assignee and owner of said obligations.

## JURISDICTION AND PARTIES

2. This Court has original jurisdiction over this action under 28 U.S.C. §1332, in that diversity of citizenship exists between the parties and the matter in controversy exceeds the sum value of $75,000.00, exclusive of interest and costs.

3. Plaintiff is a California corporation with its principal place of business in Irvine, California.

COMPLAINT

4. Plaintiff is informed and believes, and upon said information and belief alleges that Defendant Watch is an Ohio corporation with its principal place of business at 1805 N. Dixie Highway, Lima, Ohio 45801.

5. Plaintiff is informed and believes, and upon said information and belief alleges that Defendant Benton Ridge Telephone is an Ohio corporation and parent company of Watch with its principal place of business at 1805 N. Dixie Highway, Lima, Ohio 45801 (sometimes referred to herein as "Benton").

6. Plaintiff is informed and believes, and upon said information and belief alleges that Defendant Watch was founded in 1992. Watch is a wireless communications company specializing in Wireless Broadband Internet, Fiber Internet, TV, Hosting and VoIP Phone Services to both residential and business customers. Watch began as a Cable TV Provider and expanded service offerings at the beginning of the broadband internet revolution in 1998 to include internet. Watch focused on un-served and underserved small and rural markets throughout Indiana and Ohio

7. This Court has personal jurisdiction over Watch. Watch executed a written contract for services to be provided by Plaintiff this District and this action arises from Watch's knowing and intentional breach of certain contractual and common law obligations owed to Plaintiff while acting within and causing injury within this State and District.

COMPLAINT

- 3 -

8. This Court has personal jurisdiction over Benton. Benton is the parent company which owns Watch.

9. This Court has personal jurisdiction over Defendants sued as DOES 1-10. Plaintiff is informed and believes, and upon said information and belief alleges that DOES 1-10 aided and abetted Defendants Watch and Benton in breaching the written contract with Plaintiff and benefitted in some way from said breach.

10. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this District in that a substantial part of the events or omissions giving rise to this action occurred in this District. Further, the written contract at issue was executed in this District and substantially all of the services to be provided under the written contract were to be performed in this District.

11. A substantial part of the events or omissions giving rise to this claim took place within Orange County, which is within the Santa Ana division of the United States District Court, Central District of California, and venue is invoked pursuant to 28 U.S.C. §1391(b)(2).

## FACTUAL BACKGROUP

12. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein and incorporated the same herein as if ser forth in full.

13. Plaintiff Prelude System is the provider of technology services that specializes in digital transformation for app transformation, cloud migration, and business integration. Plaintiff's expertise is in its consulting and distribution expertise.

14. Under the trade name "DemandBlue" Plaintiff operates in the business of helping its customers maximize their Salesforce investment through predictable outcomes. DemandBlue has pioneered "Service-as-a-Service" through a value-based On Demand Service model that drives bottom-line results. As such it offers its customers speed, value, and success to achieve their current and future business objectives.

15. On or about November 13, 2023, Plaintiff and Defendant Watch executed a written contract called the Mutual Non-Disclosure Agreement. At the same time, Plaintiff and Defendant Watch executed a written contract called the Statement of Work. Attached hereto as Exhibits "A" and "B," and by this reference incorporated herein as if set forth in full, are true and accurate copies of the Mutual Non-Disclosure Agreement and the Statement of Work.

16. Pursuant to the Mutual Non-Disclosure Agreement and the Statement of Work, Plaintiff was to, among other things **(1)** setup of the CPQ managed package and associated settings for Quote to Order process for Watch, **(2)** configuration of CPQ specific product pricing functionality and

COMPLAINT

- 5 -

CPQ Product/Price Rules for Watch, **(3)** creation of one standard Quote template to generate a client facing PDF file using the standard Salesforce CPQ Template engine for Watch, and **(4)** for migration of existing customer data to include products, pricing, discounts, and invoicing schedules into the Salesforce Billing platform assignee and owner of said obligations.

17. Pursuant to the Mutual Non-Disclosure Agreement and the Statement of Work Plaintiff immediately commenced work for Watch, including, but not limited to an extensive review of Watch's systems and processed and began to implement integration of the Salesforce Billing platform for Watch's use.

18. Beginning on or about November 13, 2023, Plaintiff's staff personnel regularly communicated with Watch regarding the work required to be performed under the Mutual Non-Disclosure Agreement and the Statement of Work.

19. Watch failed to make any payments to Plaintiff under and pursuant to the terms of the Mutual Non-Disclosure Agreement and the Statement of Work. As a result, there is now due, owing, and unpaid between Plaintiff and Defendant Watch the total sum of $312,401.2500. Watch affirmed the contract with Plaintiff and paid Plaintiff $68,640.00 leaving a balance due to Plaintiff of $243,716.25.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract)

20. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein and incorporated the same herein as if ser forth in full in this First Claim for Relief.

21. As a direct and proximate result of the action of the Defendants, and some of them, Plaintiff has been damaged in the amount of no less than $243,716.25, plus interest and costs of suit, which amount continues to increase per day according to proof.

22. Plaintiff has performed all covenants, conditions, and duties under the Mutual Non-Disclosure Agreement and the Statement of Work on its part to be performed except to the extent that they were excused from performance thereunder by the breaches of Defendants, or some of them, as herein alleged, or according to proof.

## SECOND CLAIM FOR RELIEF

### (Common Counts – as against all Defendants)

23. Plaintiff repeats and realleges each and every allegation set forth in the paragraphs above as if fully set forth herein and incorporated the same herein as if ser forth in full in this Second Claim for Relief.

24. The Defendants and some of them, by virtue of the terms and conditions of the Mutual Non-Disclosure Agreement and the Statement of

Work, agreed to pay Plaintiff the reasonable value of the services to be performed.

25. As of the date of this Complaint, the reasonable value of the services provided to the Defendants and come of them is the sum of $243,716.25, plus interest and costs of suit, which amount continues to increase per day according to proof.

**WHEREFORE**, the Plaintiff respectfully prays for the judgment against Defendants, and each of them, as follows:

A. For a principal payment totaling $243,716.25;

B. For interest, late fees, and other fees from November 13, 2023;

C. For reasonable attorneys' fees according to proof and costs of suit herein incurred;

D. For prejudgment interest; and

E. For such other further relief as this Court deeds just and proper.

Date: July 18, 2025          Respectfully Submitted,

                             JAMES ANDREW HINDS, JR.
                             THE HINDS LAW GROUP, APC

                             By:  /s/ James Andrew Hinds, Jr.
                                  James Andrew Hinds, Jr.
                             Attorneys for Plaintiff

COMPLAINT

- 8 -

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury as to all issues.

# EXHIBIT "A"

# EXHIBIT "A"



# MUTUAL NON-DISCLOSURE AGREEMENT

This NON-DISCLOSURE AGREEMENT ("Agreement") is effective as of **November 9, 2023** executed by both parties (the "Effective Date") and is between **Prelude Systems, Inc. D/B/A DemandBlue ("DEMANDBLUE")** a CA corporation, with its principal place of business at 5 Corporate Park, Suite #140, Irvine, CA 92606, and **Watch Communications,** with its principal place of business at 3225 W. Elm Street, Lima, OH 45805.

This Agreement sets forth the terms and conditions that will apply to any Confidential Information (as below defined) disclosed by either party, itself or through its agents or affiliates, ("Discloser") to the other party ("Recipient").

1. As used in this Agreement, Confidential Information means all information that Discloser discloses to Recipient:

    a) in documents or other tangible materials clearly marked CONFIDENTIAL, PROPRIETARY, or the like;

    b) orally, or in any other intangible form, if at the time of first disclosure to Recipient, Discloser informs Recipient that the information is confidential;

    c) regarding: (i) computer software, including, without limitation, codes, flowcharts, algorithms, menu layouts, routines, report formats, data compilers, and assemblers; (ii) computer hardware systems, including, without limitation, product specifications, processes and methods, quality assurance methods, and accounting, billing, and telecommunications systems; (iii) product or service information, product development plans, product strategy, and product delivery systems; (iv) marketing information, including, without limitation, lists of potential or existing customers or suppliers, marketing plans, and surveys; (v) financial information, including, without limitation, sales and revenue information and financial statements; and (vi) business plans, policies, procedures, and information; or

    d) that under the circumstances surrounding the disclosure Recipient knows or should know that it should be held confidential. Confidential Information does not include information that Recipient can prove: (i) is or becomes publicly known or readily ascertainable by the public, through no wrongful act of Recipient; (ii) it received from a third party without breaching an obligation owed to Discloser; (iii) is independently developed by or for Recipient; or (iv) was in its possession prior to it being furnished to Recipient by Discloser.

2. Recipient agrees that Confidential Information of Discloser: (i) will not be disclosed to any person outside of Recipient's organization, unless such disclosure is made pursuant to the lawful requirement of a court or other governmental agency and may only be disclosed within Recipient's organization on a "need-to-know" basis; (ii) will be treated with the same degree of care as similar information of Recipient is treated within Recipient's organization; (iii) will not be used for the benefit of a third party; (iv) will only be used for the benefit of Discloser; and (v) will remain the property of Discloser.  Recipient will promptly return all materials containing Confidential Information, and any copies thereof at Discloser's written request after termination of this Agreement, except that Recipient's attorney may retain an archival copy indefinitely in a secure place.  In the event that Recipient is requested or required by law or the legal process to disclose any Confidential Information, Recipient will, unless prohibited by law or the legal process, promptly notify Discloser of such request or requirement so that Discloser may seek protective order or other remedy.

3. Recipient will promptly notify Discloser of any unauthorized disclosure or use of Confidential Information and cooperate with the Discloser to prevent further unauthorized use.

4. Discloser shall retain ownership of its Confidential Information. This Agreement does not grant Recipient any rights in the Confidential Information. Recipient will not remove any confidential, proprietary, trade secret, copyright, or other legend from any form of Confidential Information.

5. This Agreement does not: (i) restrict Recipient or Discloser from developing or acquiring new products or services, improving existing products or services, or marketing any new, improved or existing products or services so long as Discloser's Confidential Information is not used; (ii) commit Discloser to disclose any particular information; or (iii) require Recipient or Discloser to develop, make, use, buy, sell, or otherwise acquire or dispose of any existing or future product or service, or to favor or recommend any product or service of the other party. To be binding, any such restriction or commitment must be in writing and signed by both parties.

6. This Agreement, and all claims arising out of or related to, will be governed by the laws of the State of California without regard to the conflict of law's provisions thereof.

7. This Agreement (i) is the complete agreement between the parties regarding the subject matter hereof; (ii) may be modified only by a written instrument signed by both parties; and (iii) will not be deemed to have been waived by any act or failure to act.

8. This Agreement will apply to disclosures made during the period of three years following the Effective Date. The obligations of Recipient set forth in Section 2.0 will remain in effect for a period of five years following the date of first disclosure. Confidential Information identified as a trade secret will be held in confidence for so long as the information continues to be a trade secret.

Accepted and Agreed:

| Watch Communications ("CLIENT") | Prelude Systems, Inc. D/B/A DemandBlue ("DEMANDBLUE") |
|---|---|
| By     : Chris Daniels<br>Sign   : | By     : Kiran Babu Chandra<br>Sign   : |
| Title  : President and CEO<br>Date   : 11/13/2023 | Title  : CEO<br>Date   : 11/13/23 |

# EXHIBIT "B"

# EXHIBIT "B"



# STATEMENT OF WORK

payExhibit-A

This Statement of Work ("SOW") is made and entered as of **November 9, 2023** (the "Statement of Work Effective Date") pursuant to the terms and conditions of the Master Services Agreement dated **November 9, 2023,** by and between **Prelude Systems, Inc. D/B/A DemandBlue** ("DemandBlue") and **Watch Communications** ("Client").

| DESCRIPTION OF CUSTOMER RESPONSIBILITIES AND SCHEDULE DEPENDENCIES: | |
|---:|:---|
| Target Start Date: | 11/13/2023 |
| Final Requirements: | 12/08/2023 |
| Target End Date: | 02/29/2024 |
| Service Type: | Salesforce CPQ & Billing Implementation |
| Hourly Rate: | $120.00 per hour for onshore<br>$75.00 per hour for offshore |
| Total Estimated: | Est. 800 hours configuration, 200+ hours data migration |
| Location: | Offsite/Remote |
| Payment Terms: | NET 30 days |
| Invoicing Frequency: | Every two weeks |
| Invoice To: | **DemandBlue** will send invoices to payables@watchcomm.net |
| Others: | Any project expenses must pre-approved in writing by Client. All travel to onsite and onsite accommodation to be covered by the Client. |

## Scope of Work Overview:

### Salesforce CPQ QuickStart

| Functional Area | Description | Dev Hours |
|---|---|---|
| CPQ Package Setup | Setup of the CPQ managed package and associated settings for Quote to Order process | 20 |
| Product Pricing | Configuration of CPQ specific product pricing functionality and CPQ Product/Price Rules | 20 |
| Quote Template | Creation of one (1) standard Quote template to generate a client facing PDF file using the standard Salesforce CPQ Template engine | 40 |
| Quote Line Editor Configuration | Setup of the QLE with pricing and discounting fields displayed for Sales Reps to adjust pricing | 20 |

## Salesforce Billing Implementation

| Functional Area | Description | Dev Hours |
|---|---|---|
| Billing Package Setup | Creation of default revenue flow and legal entities for payment allocation within the Billing platform. | 40 |
| Invoice Generation | This involves configuring the system to generate invoices based on specific triggers such as order placement or delivery. It includes setting up invoice templates and rules. | 80 |
| OmniStudio Invoice Templates | Implementing via OmniStudio up to 4 custom invoice templates that display one-time and bundle products w/pricing, discounts, taxes and call record details. | 100 |
| Invoice Scheduling | Automating invoice scheduling to reduce manual effort setting up automated processes and workflows. | 40 |
| Self Service Invoice Payments | Setup of out of the box Self Service payment pages via Lightning Payment Site (no login). Client required to provide creative and Credit Card authorization gateway. | 80 |
| Payment/Allocations | Implementing payment allocations, including credit card payments & ACH. Configuring rules for allocating payments to invoices. | 40 |
| Tax Treatments | Setup of standard Salesforce Billing tax treatments provider would involve configuring tax rules and ensuring accurate tax calculations on invoices. | 40 |
| Revenue Rec/Finance Books | Configuration of out of the box revenue recognition rules, schedules, financial transactions, and GL treatments. | 60 |
| Finance Reporting | Setting up financial reporting and invoice reports creating custom reports and dashboards to track billing performance and financial metrics. | 20 |
| Data Migration for Existing Customers | Migration of existing customer data to include products, pricing, discounts, and invoicing schedules into the Salesforce Billing platform | 200+* |

*Data migration estimated based on current understanding of invoicing needs and details. Final scope to be provided after data sample and total record counts provided by client.

Assumptions:
- Client to provide eSignature account if required
- Client to purchase & provide access to a compatible Credit Card Authorization provider
- Client to provide all language for invoice terms & conditions
- Client to provide sandbox environment to perform and review all work completed
- DemandBlue to deploy changes to production org & ensure functional acceptance

2

- Estimation is for the current scope of work; any extra effort or additional scope items will need prior approval from the client
- Two-week warranty support period after project go-live

**Out of Scope:**
- Data Migration of existing records unless otherwise noted above in scope of work
- Advanced Approvals configuration
- Custom Development & Integration
- Updating existing automation processes

**Project Resources:**

| Resource | Description |
|---|---|
| Project Manager/CSM | Overall project owner sets schedule and ensures deliverables are met. Serves as escalation point if there are any scope or schedule changes. |
| Revenue Cloud Solution Architect | Experienced Salesforce Revenue Cloud SA that will lead primary discovery. Responsible for overall solution design and scoping efforts. |
| CPQ Consultant | Business Analyst that will help in determining scope and own creation of primary epics and user stories |
| CPQ Developer(s) | Technical resources tasked with assisting in solution design and scoping efforts |

**Project Estimate – CPQ & Billing Implementation:**

| Project Phase & Deliverable | Schedule | Onshore @ $120hr | Offshore @ $75hr | Est Hours | Estimated Total |
|---|---|---|---|---|---|
| Architect: Discovery & Design | Nov 13 – Dec 08 | 100 | 0 | 100 | $12,000.00 |
| Sprint 1: CPQ Configuration | Dec 4 - 20 | 20 | 80 | 100 | $8,400.00 |
| Sprint 2: Billing Package Setup | Jan 1 - 19 | 30 | 200 | 230 | $18,600.00 |
| Sprint 3: Billing Rules & Invoices | Jan 22-Feb 09 | 30 | 200 | 230 | $18,600.00 |
| Data Transformation & Migration | Feb 12-23 | Client to own data migration of 200+ hours | | | |
| UAT & Deployment | Feb 12-23 | 60 | 80 | 140 | $13,200.00 |
| Total Hours & Costs | | 240 | 560 | 800 | $70,800.00 |
| Total Project Hours w/Data Migration* | | Data Migration: 200+ | | 800hrs | 1000hrs |

*Client to take on data transformation & migration into CPQ & Billing Platform

3

**Risks:**
- Estimation and Timeline has been provided without having a final design.
- Data sample and total record count for data migration unknown.

**Change Control Process:**
- As additional scope items are added to or removed from the project these initiatives will be called out by the DemandBlue Project Manager and added to the DemandBlue Customer portal or Client as an Initiative.
- Each Initiative will be updated in the Client Portal with a Level of Effort and assigned to the Client for review.
- Approved Change Requests will be billed at a rate of $120.00/$75.00 per hour based on resource location.
- The Scoped Initiative is valid for 7 (Seven) days from the date of submission for Client review.
- Client is responsible for any follow-up questions as it pertains to the Level of Effort. If approved the DemandBlue Project Manager will update the project scope and timeline to adjust for the newly scoped item.
- Client can make changes to project scope without incurring additional costs if the total effort is not changed and an item of equal scope is removed from the project.
- If rejected the scoped Initiative will remain in the Client Portal for future user or reference.

**Terms & Conditions:**
- DemandBlue requires a two-week lead time for resource alignment from the signature date.
- Should there be a delay in the review, approval, or rejection of project deliverables beyond two business days, which leads to resource idle time, such change in the schedule will be submitted to client via a project Change Request.
- Any additional items not covered under the scope of this project, identified during the project otherwise will be analyzed as per DemandBlue' change control process and its impact on the project schedule & cost will be shared with client.
- DemandBlue will initiate the development of the changes upon the receipt of the approval to proceed.

IN WITNESS WHEREOF, the parties have caused this Statement of Work to be executed as of the Statement of Work Effective Date by their duly authorized representatives.

| Watch Communications ("CLIENT") | Prelude Systems, Inc. D/B/A DemandBlue ("DEMANDBLUE") |
|---|---|
| By : Chris Daniels | By : Kiran Babu Chandra |
| Sign : | Sign : |
| Title : President and CEO | Title : CEO |
| Date : 11/13/2023 | Date : 11/13/23 |

4